### In re CASSELL.
### No. 2138.

District Court, E. D. Illinois.

Aug. 12, 1933.

Malc & Bell, of Watseka, Ill., for bankrupt.

**LINDLEY, District Judge.**

The referee entered an order denying petitioner, Ray Webster, an execution creditor of bankrupt, any lien upon the personal property levied upon by the sheriff, description of which appears in the record, and this review follows.

On July 9, 1932, petitioner recovered judgment in the circuit court of Iroquois county, Ill., against bankrupt for $4,099.83 and costs of suit. A part of the debt has since been paid, and there is a balance due of approximately $3,519.80. A writ of execution upon this judgment issued on July 9, 1932, and was returned nulla bona on October 10, 1932, but an alias writ immediately issued and was placed in the hands of the sheriff, who, on January 5, 1933, levied upon certain oats in the bins and corn in the cribs on various farms of the bankrupt located in Iroquois county. The sheriff advertised the property levied upon for sale on February 27, 1933. On February 25, 1933, the judgment debtor was adjudicated bankrupt upon his voluntary petition filed on that date.

At the time of the issuance of the alias writ of execution, on October 10, 1932, all of the oats levied upon had been grown during the year of 1932, had been threshed and divided by the tenants into two parts, one-half being placed in the granaries allotted to the landlord, the bankrupt, and one-half in the granaries allotted to the tenants. A part of the corn levied upon had then been husked and placed in cribs allotted to the bankrupt, in a similar manner. The remainder of the corn levied upon was husked after the issuance of the execution and placed in the cribs allotted to the landlord before the levy. All of it was grown in the year 1932.

Each of the tenants occupied premises under lease from the bankrupt which provided that the tenant should pay as rent "one-half of the corn and oats grown on the farm, delivered to the elevator in Iroquois, Illinois, as the landlord might direct." None of the grain levied upon had been so delivered.

It had been the custom upon the part of the bankrupt and his tenants in previous years, acting under the same leases, to divide the corn as husked and the oats as threshed and segregate them into lots in cribs and granaries allotted to the respective parties in the same manner as were the grains levied upon.

It is the contention of the judgment creditor that, inasmuch as his lien antedated the date of the filing of the petition in bankruptcy more than four months, it became a prior lien upon the landlord's share of the crops segregated and allotted to the bankrupt at the date of issuance, October 10, 1933, and that this lien attached to the remainder of the corn as it was husked and placed in the cribs allotted to the landlord. This is upon the basis that, as a result of the grain being allotted to the landlord, it became the property of the landlord and subject to the writ of execution against him.

It is contended by the trustee in bankruptcy that under the law of Illinois crops raised by tenants under such leases as these remain the property of the tenant until delivered in accordance with the terms of the lease, and that, as inasmuch as none of this grain had been delivered to the elevator in payment of the rent due, it was not subject to levy as the property of the landlord.

It is undoubtedly true that under such leases the title to the whole of the crop raised will be that of the tenant until divided and possession given. It appears here that the landlord had not expressly accepted the allotment to him, in fact, did not know of the same, though it had been his custom to have grain so allotted to him by each of the tenants in each of the preceding years. Apparently this custom is sufficient to constitute a passing of title. Though the tenant was bound to deliver the crop to the elevator before his contract had been fully performed, I do not believe that the failure to deliver to the elevator will defeat the title of the landlord. The property was set off to him, as it had been for years. It was pointed out by the tenants as the property of the landlord. A complete division had taken place. Nothing remained to be done except to haul the grain to the market. If the tenant had died or if he had become bankrupt before the delivery of the grain to the elevator, those facts surely would not prevent the landlord from asserting ownership of the grain allotted to him in accordance with the custom of the past. Surely, if

the tenant had set off to the landlord his share of the grain under the leases, and it had been segregated, awaiting the orders of the landlord as to the delivery at the elevator, the tenant would have been estopped to deny that the same was the landlord's. Though the landlord had not expressly approved the same, he had followed a similar custom in previous years, and could take possession of the property at any time desired if the tenant failed to haul to market as agreed.

Consequently, the writ of execution issued October 10, 1933, delivered to the sheriff, became a lien upon all grain then threshed or husked and allotted to cribs or granaries for the landlord. Furthermore, it became a lien upon all other grain thereafter so divided before the date of levy allotted to the bankrupt. This was sufficient segregation and passed the title to the landlord unless he should thereafter see fit to disaffirm the division. This he or his trustee never did.

Accordingly the order of the referee will be reversed, with directions to allow the lien of the judgment creditor upon all property levied upon. The lien upon such property shall be transferred to the proceeds of sale thereof, and the trustee shall sell the same under the order of referee subject to his approval and satisfy from the proceeds of sale the lien of the petitioner.